**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| HENRY SMITH,<br><br>　　　　　Petitioner,<br><br>　　v.<br><br>ATTORNEY GENERAL OF THE STATE<br>OF NEW JERSEY, *et al.*,<br><br>　　　　　Respondents. | Civil Action No. 22-4884 (GC)<br><br>**MEMORANDUM &**<br>**ORDER TO SHOW CAUSE** |

**THIS MATTER** comes before the Court on the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (§ 2254) filed by *pro se* Petitioner Henry Smith. (ECF No. 1 ("Petition").) For the reasons set forth below, the Court directs Petitioner to **SHOW CAUSE** as to why his Petition should not be dismissed as moot and provides Petitioner the opportunity to withdraw his request to amend the Petition to raise an unexhausted ex post facto claim, to submit any arguments Petitioner may have to overcome the procedural default of this ex post facto claim, or to show that the Court should stay this matter to allow him to exhaust this claim.

In its November 18, 2020 opinion affirming the New Jersey State Parole Board's ("Board") 2019 denial of parole, the Superior Court of New Jersey, Appellate Division ("New Jersey Appellate Division") provided the following factual and procedural summary:

> Appellant Henry Smith is a prison inmate serving a life sentence with a mandatory minimum of twenty-five years of parole ineligibility. He appeals, pro se, from the August 28, 2019 final agency decision of the New Jersey State Parole Board (Board) denying his application for parole and imposing a one hundred-month future eligibility term (FET). We affirm.

In 1989, appellant was found guilty of kidnapping and aggravated assault, among other offenses, following a May 1988 incident where he grabbed a fifteen-year-old girl, held her at knife point, and dragged her into his car. Appellant threatened to kill his victim and punched her in the face several times before she was able to escape. Appellant's criminal history also includes the 1975 murder of an eight-year-old girl.

In 2013, appellant first became eligible for parole for his 1988 offenses and was denied. He was eligible for parole again in 2019, but a two-member panel of the Board denied his parole request and referred the matter to a three-member panel to establish an FET. The two-member panel found appellant "does not seem to have any understanding of his violent, aggressive, [and] sexual actions. He blames the victim, alcohol [and] rejection. He expresses limited empathy [and] remorse for his victims."

In April 2019, a three-member panel of the Board imposed a one-hundred-month FET, expressing its rationale in a thorough written opinion. The panel found the factors supporting denial of parole, collectively, were "of such a serious nature" as to warrant the setting of a one-hundred-month FET, which the panel deemed necessary to provide appellant with an opportunity to address the multiple issues identified by the panel. The panel acknowledged appellant's participation in institutional programming, but found his "lack of progress" in understanding his behavior and his "failure to appreciate the severity of [his] actions [was] reflective of an individual who requires further programming to assist [him] in addressing these deficiencies." Appellant appealed these decisions to the full Board, and the Board issued a final agency decision, affirming the panels' parole denial and establishment of a one-hundred-month FET.

Appellant presents the following contentions for our consideration:

POINT I

THE BOARD PANEL FAILED TO CONSIDER MATERIAL INFORMATION RENDERING THE DECISION AGAINST THE WEIGHT OF THE EVIDENCE.

POINT II

2

THE BOARD PANEL UTILIZED INCORRECT
STANDARDS IN RENDERING ITS DECISION
TO DENY PAROLE TO HENRY SMITH.

POINT III

THE BOARD PANEL SHIFTED THE BURDEN
OF PROOF TO MR. SMITH TO PROVE THAT HE
IS READY FOR PAROLE IN CONTRAVENTION
TO ESTABLISHED POLICY AND PROCEDURE,
AS WELL AS THE FUNDAMENTAL FAIRNESS
THAT SUCH POLICY AND PROCEDURE ARE
DESIGNED TO GUARANTEE.

POINT IV

THE PROCEEDINGS WAS NOT CONDUCTED
IN CONFORMITY WITH THE CODE OF
PROFESSIONAL CONDUCT.

POINT V

BECAUSE THE BOARD PANEL UTILIZED THE
SAME AGGRAVATING REASONS TO DENY
PAROLE AND ESTABLISH AN 100 MONTH
FUTURE ELIGIBILITY TERM A SECOND TIME
AS IT DID IN THEIR FIRST HEARINGS, THE
DECISION IS CONTRAVENE TO THE SPIRIT
OF N.J.S.A. 30:4-123.5-6, THE PRINCIPLES OF
DOUBLE COUNTING AND JEOPARDY,
FUNDAMENTAL FAIRNESS, 5TH
AMENDMENT DUE PROCESS, AND 8TH
AMENDMENT UNUSUAL PUNISHMENT.

*Smith v. N.J. State Parole Bd.*, No. A-0369-19T1, 2020 WL 6778574, at *1 (N.J. Super. Ct. App.

Div. Nov. 18, 2020) (per curiam).  On or about December 14, 2020, Petitioner filed a petition for

certification with the New Jersey Supreme Court in which he raised the following two grounds for

relief: (1) THE NEW JERSEY SUPREME COURT MUST ADDRESS THE

COSNTITUTIONAL DUE PROCESS VIOLATION THE APPELLATE COURT FAILED TO

RULE ON; and (2) THE NEW JERSEY SUPREME COURT MUST ADDRESS THE DOUBLE

3

JEOPARDY CONCERN THE APPELLATE COURT CONTINUE TO RECOGNIZE AND FAILED TO ADDRESS. (ECF No. 1 at 5-6.) On October 21, 2021, the New Jersey Supreme Court denied the petition for certification. *See Smith v. N.J. State Parole Bd.*, 248 N.J. 539 (2021).

On or about August 1, 2022,[1] Petitioner filed his Petition. (ECF No. 1.) He raises two grounds for relief (recited herein verbatim): (1) THE NEW JERSEY STATE PAROLE HEARING PANEL FAILED TO RESPOND AND RULE ON PEITITIONER'S REQUEST FOR RECONSIDERATION APPEAL AND THE N.J. SATE COURTS (APPELLATE DIVISION AND SUPREME COURT) FAILED TO RULE ON THE SAME, WHEREBY VIOLATING PETITIONER'S DUE PROCESS RIGHT CONCERNING ANY APPEALABLE CAUSE; and (2) BOTH N.J. STATE COURTS FAILED TO ANSWER THE CONSTITUTIONAL CONCERN TRIGGERED BY THE CHANGE MADE IN PAROLE STANDARDS BACK IN 1996 CONCERNING THE QUESTION "HOW MANY TIMES CAN N.J. STATE PAROLE USE THE SAME AGGRAVATING FACTORS AND SANCTIONS TO DENY N.J. STATE PRISONERS PAROLE RELEASE." (*Id.* at 6, 8.)

On September 7, 2022, the Court ordered Respondents to file an answer (ECF No. 5), and, after the Court granted a request for an extension of time (ECF No. 8), Respondents' answer and legal argument were filed on November 21, 2022 (ECF No. 9 ("Answer"); ECF No. 9-1 ("Legal Argument")). Petitioner filed a traverse on or about December 12, 2022. (ECF No. 13 ("Traverse").)

Petitioner has submitted several letters requesting a decision on his Petition. (ECF Nos 14-19.) In the initial letter postmarked January 22, 2024, he states that, on January 9, 2024, he was

---

[1] *See Burns v. Morton*, 134 F.3d 109, 113 (3d Cir. 1998) (holding that a *pro se* prisoner's filing is deemed filed at the moment he or she delivers it to prison officials for mailing to the district court).

contacted regarding his parole plan interview in preparation to be seen by the Board for the third time. (ECF No. 14 at 1.)

In a letter dated May 20, 2024, Petitioner indicates that he appeared at an initial parole hearing on May 3, 2024, where he was referred to a two-member parole panel. (ECF No. 15 at 2.) According to Petitioner, he had his third parole release hearing on May 13, 2024, and release was denied based on the same aggravating factors (*i.e.*, his prior criminal record) previously used to deny parole. (*Id.*) Petitioner asserts that, because only "Old" information was used to justify the 2024 parole denial, "[t]his is Ground Two within my habeas corpus petition." (*Id.* (emphasis omitted).) Petitioner states that he must proceed with another round of appeals but he ran "into a major problem" because he "cannot file an appeal on a legal issue when that same issue is open in another court." (*Id.* (emphasis omitted).)

Petitioner states in a January 16, 2025 letter that he will "soon" be "appealing [his] recent 3rd parole release denial of May 13, 2024 to the District Court and [he is] wondering how that will play out when [his] habeas corpus petition appealing [his] 2nd parole release denial of March 15, 2019 has not been ruled on yet." (ECF No. 17 at 2 (emphasis omitted).) Petitioner asks for the Court's "assistance to proceeding with filing an habeas corpus or 1983 petition with the same grounds as [his] HC Petition of 2022." (*Id.* (emphasis omitted).) Attached to his February 20, 2025 letter is a similar letter purportedly dated January 16, 2025 noting Petitioner's intention to appeal his third parole denial "soon," asking how his appeal will "play out" when his habeas petition appealing his second parole denial has not yet been decided, and requesting the Court's assistance with filing a habeas or 42 U.S.C. § 1983 petition raising the same grounds in his 2022 Petition. (ECF No. 18 at 2-3 (emphasis omitted).)

In response to Petitioner's most recent letter (dated June 16, 2025) (ECF No. 19), the Court entered a text order on June 25, 2025, stating that it is in receipt of Plaintiff's pending habeas petition, which will be decided in due course. (ECF No. 20.)

Federal courts do not have jurisdiction to decide an issue unless it presents a live case or controversy as required by Article III of the United States Constitution. *See Spencer v. Kemna*, 523 U.S. 1, 7 (1998). "To invoke the jurisdiction of a federal court, a litigant must have suffered, or be threatened with, an actual injury traceable to the defendant and *likely to be redressed by a favorable judicial decision*." *Burkey v. Marberry*, 556 F.3d 142, 147 (3d Cir. 2009) (emphasis added) (quoting *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990)). "The case or controversy requirement continues through all stages of federal judicial proceedings, trial and appellate, and requires that parties have a personal stake in the outcome." *Id.* (citing *Lewis*, 494 U.S. at 477-78). Thus, if developments occur that eliminate a petitioner's personal stake in the outcome of a suit or prevent a court from being able to grant effective relief, the case must be dismissed as moot. *See Keitel v. Mazurkiewicz*, 729 F.3d 278, 280 (3d Cir. 2013).

Although a challenge to a denial of parole is cognizable under § 2254, a federal court cannot grant parole or determine parole eligibility; instead, the only remedy which the court can provide is to order the state parole board to correct the abuses or wrongful conduct within a fixed period of time, after which, if the board does not comply, the court can grant the writ and order the prisoner discharged from custody. *See Mathis v. Rivello*, No. 23-255, 2025 WL 524301, at *5 (M.D. Pa. Feb. 18, 2025), *appeal filed*, No. 25-1529 (3d Cir. Mar. 24, 2025). "In the context of habeas challenges to parole refusals, a subsequent parole hearing generally moots claims where the proper relief is a new parole hearing." *Hebden v. N.J. State Parole Bd.*, No. 14-4568, 2017 WL 3602052, at *1 (D.N.J. Aug. 22, 2017) (quoting *Thompson v. D'Ilio*, No. 13-6282, 2016 WL

6306953, at *5 (D.N.J. Oct. 27, 2016)); *see also Mathis*, 2025 WL 524301, at *6 ("Due to the Parole Board's August 20, 2024 denial of parole, Mathis's challenges to his denials of parole from 2014 through 2023 are moot." (citations omitted)); *Pullium v. Pa. Bd. of Probation & Parole*, No. 23-1140, 2024 WL 3445462, at *2 (W.D. Pa. June 26, 2024) ("[B]ecause the only relief that a court can grant in such circumstances is a new parole hearing, a subsequent hearing held by the Parole Board renders an inmate's challenge to the prior parole decision moot." (citations omitted)), *R&R adopted by* 2024 WL 344366 (W.D. Pa. Jul. 17, 2024).

According to Petitioner, "on May 13, 2024, [he] had [his] 3rd parole release hearing and release was denied." (ECF No. 15 at 2.) Given this apparent "subsequent parole hearing [and denial]," *Hebden*, 2017 WL 3602052, at *1 (citation omitted), the Court orders Petitioner to show cause why this Petition should not be dismissed as moot.

Even if Petitioner shows that his Petition should not be dismissed on mootness grounds, the parties' filings raise several issues that apparently hinder the resolution of Petitioner's purported claims for relief on the merits.

It is well established that an application for habeas corpus "shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). To satisfy the exhaustion requirement, a petitioner must "fairly present" the claim by presenting its "factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted." *McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999) (citations omitted); *see also Lines v. Larkins*, 208 F.3d 153, 159-60 (3d Cir. 2000). The federal claim must also be fairly presented at each available level of the state courts. *See Lines*, 208 F.3d at 159–161; *Evans v. Ct. of Com. Pleas, Del. Cnty., Pa.*, 959 F.2d 1227, 1230 (3d Cir. 1992) ("A claim must be presented not only to the trial court but also to the state's intermediate

7

court as well as to its supreme court"). If a petitioner has the right under state law to raise, by any available procedure, the question presented, then he will not be deemed to have exhausted his available state court remedies. *See Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000) (citing 28 U.S.C. § 2254(c)). Petitioner has the burden of demonstrating that he has exhausted available state remedies. *See Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997), *as amended* (1998).

New Jersey law provides an absolute right to appeal any action or decision of a state administrative agency to the New Jersey Appellate Division. *See* N.J. Ct. R. 2:2-3(a)(2); *Trantino v. N.J. State Parole Bd.*, 166 N.J. 113, 172 (2001), *modified on other grounds*, 167 N.J. 619 (2001). The right to appeal extends to decisions by the New Jersey State Parole Board. *See Trantino v. N.J. State Parole Bd.*, 296 N.J. Super. 437, 459-60 (App. Div. 1997), *modified on other grounds*, 154 N.J. 190 (1998).

Petitioner exhausted his state remedies as to Grounds One and Two in his Petition. As to Ground One, in the appellate brief he submitted to the New Jersey Appellate Division, Petitioner argued that "the conduct of the Board Panel was not according to the Code when they specifically failed to respond [under] **N.J.A.C.** **10A:4.1(a)(2)** on April 10, 2019" and that, "[n]ot answering demonstrated their professional [mis]conduct [and] is contrary to procedural due process and the principles of fundamental fairness." (ECF No. 1-1 at A-132 (citation omitted).) In the unsuccessful petition for certification he filed with the New Jersey Supreme Court, Petitioner reiterated his due process arguments regarding his motion for reconsideration, claiming that the New Jersey Appellate Division failed to rule on the issue. (*Id.* at A-164.)

As to Ground Two, Petitioner argued at some length in his New Jersey Appellate Division brief that the same aggravating reasons or facts that were used to deny him parole and establish a FET in his second parole proceeding were previously used to deny him parole in the first parole

proceeding, and that this approach violated, *inter alia*, his rights under the Double Jeopardy, Due Process, and the Cruel and Unusual Punishment Clauses.  (ECF No. 1-1 at A-135 – A145.) Petitioner raised the same issue in his petition for certification, claiming that the New Jersey Supreme Court "must address the Double Jeopardy issue the Appellate Court continue[s] to recognize[] and fail[s] to address" and questioning "[h]ow many times can Parole use the same Aggravating Factors to deny New Jersey State Prisoners parole release at a 2nd or subsequent 3rd or 4th Parole Release Hearings."  (*Id.* at A-163, A-166.)

According to Respondents, "[w]hile Smith characterizes his claim as a Double Jeopardy claim, he is, in fact, alleging an Ex Post Facto violation."[2]  (ECF No. 9-1 at 12-13.)  As Respondents note, the 1979 version of the New Jersey parole statute (in effect when Petitioner was convicted and sentenced) provided that "an inmate shall be released on parole on the new parole eligibility date unless *new information* . . . indicates by a preponderance of the evidence that there is a substantial likelihood that the inmate will commit a crime under the laws of this State if released on parole."  (*Id.* at 13 (emphasis added) (quoting N.J. Stat. Ann. § 3:4-123.56(c)).  In August 1997, the New Jersey Legislature removed the qualifier "new."  (*Id.* at 13-14.)  The amendments thereby authorized the Board to consider an inmate's entire record (*i.e.*, "all information") as opposed to merely considering "new information."  (*Id.* at 14.)

Citing to *Holmes v. Christie*, 14 F.4th 250 (3d Cir. 2021), Respondents state that  "[t]he Third Circuit held that the prisoner-plaintiff could mount an as-applied challenge to the denial of parole on ex post facto grounds if discovery showed that 'that the Board implemented the all-information provision in a way that created a significant risk of prolonging his incarceration,' which is a 'fact-sensitive inquiry.'"  (ECF No. 9-1 at 14 (quoting *Holmes*, 14 F.4th at 260).)

---

[2]      Article I, Section 10 of the United States Constitution provides that "[n]o State shall . . . pass . . . any . . . ex post facto law."

Respondents asserts that: (1) *Holmes* did not limit the Board's consideration in any pre-1997 case to solely "new information" and instead found that the amended statute was facially valid under the Ex Post Facto Clause; (2) *Holmes* is distinguishable because this case presents the Court with completed fact-finding (while *Holmes* was a civil rights action decided on a motion to dismiss); (3) the New Jersey Appellate Division found in *Trantino v. New Jersey*, 331 N.J. Super. 577 (App. Div. 2000), *aff'd in part, modified in part, & remanded on other grounds by* 166 N.J. 113 (N.J. 2001), that consideration of all information at subsequent parole hearings does not constitute an ex post facto violation because the 1997 amendments were procedural modifications; (4) the *Holmes* court, although it did not adopt the New Jersey Appellate Division's approach, chose not to "overrul[e]" *Trantino*; and (5) in the present case, the Board's rulings made it clear that the most significant factor in denying parole was Petitioner's current (and "new") lack of insight and insufficient problem resolution. (ECF No. 9-1 at 14-17.)

However, in his Petition, Petitioner does not raise a challenge under the Ex Post Facto Clause to the "retroactive application of the 1997 Amendments," *Holmes*, 14 F.4th at 259. Instead, Petitioner indicates that his constitutional rights, specifically, his rights under the Double Jeopardy Clause, were violated because, under the 1997 standard, the Board used "these same aggravating factors to punish again and again." (ECF No. 1 at 8 (emphasis omitted).) In other words, the Board allegedly violated the Double Jeopardy Clause by imposing successive punishments in the form of multiple parole denials and FET terms for the same "old" information, specifically his past criminal conduct. (*Id.* at 8, 20-21); *see also Torres v. Brittain*, No. 22-5162, 2025 WL 1680188, at *6 (E.D. Pa. Jan. 14, 2025) ("The Double Jeopardy Clause provides that no person shall 'be subject for the same offense to be twice put in jeopardy of life or limb.' U.S. Const. amend. V. Courts have held that this clause protects against . . . multiple punishments for the same offense."

(citing *Stiver v. Meko*, 130 F.3d 574, 578 (3d Cir. 1997)), *R&R adopted by* 2025 WL 1680004,

(E.D. Pa. June 13, 2025). According to Petitioner, "[e]very time we visit these aggravating factors

that deals with my past criminal behavior, we will always conclude that [he is] guilty because [his]

past criminal record WILL NEVER CHANGE."[3] (ECF No. 1 at 21.)

  In Petitioner's Traverse and subsequent correspondence, Petitioner does appear to raise an

ex post facto claim for relief. (*See* ECF No. 13 at 11-12 ("The important question is whether the

change in the parole Standards of 1997 . . . realistically produced a sufficient risk of increasing

prisoners punishment as to offend the Constitutional prohibition[.] Now, when reviewing

[*Holmes*] the fact finding truth reveals it violates the Ex Post Facto Clause.").) Accordingly, the

Court construes Petitioner's filings as requesting leave to amend his Petition to raise a claim for

relief under the Ex Post Facto Clause.

---

[3] Petitioner does assert in his Petition that "[t]he Constitutional violation was triggered in the 2nd and 3rd Parole Release Hearings because the principles of Double Jeopardy enters in when Parole applies the *new* Standard *retroactively*." (ECF No. 1 at 20 (emphasis added).) According to him, the state courts "continue to avoid answering this Constitutional concern and failing to do so continues to allow unjust Parole Release denials and punishments when the *new* Parole Standard is applied *retroactively* upon the Petitioner and many other New Jersey State prisoners." (*Id.* at 21 (emphasis added).) However, although the Court must construe the *pro se* Petition liberally, *see Rainey v. Varner*, 603 F.3d 189, 198 (3d Cir. 2010), such passing references to the "retroactive" application of a "new" standard do not show that Petitioner raises a claim under the Ex Post Facto Clause, especially given Plaintiff's emphasis on the Double Jeopardy Clause and being successively punished for the same conduct at two parole hearings. (*See* ECF No. 1 at 8, 20-21.) In short, the retroactive application of the 1997 "All Information" approach resulted in the Board allegedly relying on "old" information to deny parole to prisoners convicted and sentenced before 1997. But, according to the Petition, it is not the application of a new parole rule to previously convicted and sentenced prisoners that violates the Constitution; instead, it is use of the same "old" information to deny parole "again and again" that allegedly violates the Constitution's double jeopardy principles because the Board is repeatedly punishing the prisoner for the same conduct. In fact, Petitioner's "Double Jeopardy" theory also applies to prisoners convicted and sentenced after the 1997 amendments came into force if their parole requests are repeatedly denied based on the same "old" information under the "All-Information" standard. In any event, as the Court explains below, Petitioner failed to exhaust an ex post facto claim in the state courts.

Nonetheless, the proposed claim was not exhausted in the state courts. On the contrary, as the Court has explained, Petitioner raised the same double jeopardy claim before the New Jersey Appellate Division and the New Jersey Supreme Court that he presents in Ground Two of the Petition. (*See* No. 1-1 at A-135 – A145, A-163, A-166.) Instead of fairly presenting the "factual and legal substance" of an ex post facto claim, *see McCandless*, 172 F.3d at 261, Petitioner admitted that, in *Trantino*, the New Jersey Appellate Division "held that elimination of the 'new evidence' standard of the 1997 amendments to N.J.S.A. 30:4-123.56c did not violate the ex post facto clause of the Constitution, '[. . .] since this change in the law is a procedural modification that does not constitute a substantive change in the parole release criteria.'" (No. 1-1 at A-137 – A-138, A-167 – A-168 (alteration in original) (quoting *Trantino*, 331 N.J. Super. at 610).) Petitioner did not dispute *Trantino*'s holding in either the briefing he submitted to the New Jersey Appellate Division or in his petition for certification.[4]

As a general rule, federal courts should "dismiss without prejudice claims that have not been properly presented to the state courts, allowing petitioners to exhaust their claims." *Lines*, 208 F.3d at 159-60; *see also Mathis v. Att'y Gen. of N.J.*, 732 F. App'x 138, 140-42 (3d Cir. 2018) (remanding with direction to dismiss mixed petition without prejudice where it was unclear whether further review was barred by New Jersey courts). On the other hand, if a petitioner has

---

[4]    In their Answer and Legal Argument, Respondents fail to raise exhaustion as an affirmative defense. Respondents also admit that Petitioner raised Ground Two in his administrative appeal to the Board, his appeal to the New Jersey Appellate Division, and his petition for certification filed with the New Jersey Supreme Court. (ECF No. 9 at 2.) However, as the Court has discussed, Ground Two consists of a double jeopardy claim (and not a claim under the Ex Post Facto Clause). Because Respondents do not expressly concede that the ex post facto claim is exhausted, the Court does not find that exhaustion is waived. *See Sharrieff v. Cathel*, 574 F.3d 225, 227-28 (3d Cir. 2009) ("Under Section 2254(b)(3), an express waiver requires more than just the failure to raise exhaustion as a defense." (citing *Lambert*, 134 F.3d at 514)).

not fairly presented the claim and review on the merits is "so 'clearly foreclosed' by state law that we can 'conclude with certainty' that state courts afford no recourse for the claim," *Roman v. DiGuglielmo*, 675 F.3d 204, 209 (3d Cir. 2012) (quoting *Lines*, 208 F.3d at 165, 163), "the claim is 'procedurally defaulted,'" *Wilkerson v. Superintendent Fayette SCI*, 871 F.3d 221, 228 (3d Cir. 2017) (quoting *Wenger v. Frank*, 266 F.3d 218, 223 (3d Cir. 2001)).  Unless the petitioner can "demonstrate cause and prejudice for the default [or] . . . a fundamental miscarriage of justice, [the] petition should [be] dismissed with prejudice."[5] *Lines*, 208 F.3d at 160; *see also Slutzker v. Johnson*, 393 F.3d 373, 381 (3d Cir. 2004).

Upon being presented with a "mixed petition" raising both exhausted and unexhausted claims, the district court must either dismiss the unexhausted claims and proceed with the exhausted claims, or stay the habeas proceedings to permit the petitioner to exhaust the unexhausted claims while suspending the limitations period on the exhausted claims. *See Rhines v. Weber*, 544 U.S. 269, 275-78 (2005).  Before granting such a stay, the Court must examine whether good cause exists for the petitioner's failure to exhaust all claims in state court, whether the unexhausted claims are potentially meritorious, and whether the petitioner is employing the litigation simply as means of delay. *See id.* at 277; *Gerber v. Varano*, 512 F. App'x 131, 135 (3d Cir. 2013) (per curiam).

---

[5]      Where unexhausted or procedurally defaulted claims are patently meritless, the Court may also deny petitioner's unexhausted claim on the merits.  *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); *Taylor v. Horn*, 504 F.3d 416, 427 (3d Cir. 2007) ("Here, because we will deny all of [petitioner's] claims on the merits, we need not address exhaustion." (citation omitted)); *Bronshtein v. Horn*, 404 F.3d 700, 728 (3d Cir. 2005) (considering procedurally defaulted claim, and stating that "[u]nder 28 U.S.C. § 2254(b)(2), we may reject claims on the merits even though they were not properly exhausted, and we take that approach here").

Habeas petitions "may be amended . . . as provided in the rules of procedure applicable to civil actions." *Mayle v. Felix*, 545 U.S. 644, 654 (2005) (quoting 28 U.S.C. § 2242). Federal Rule of Civil Procedure 15 is "made applicable to habeas proceedings by § 2242, Federal Rules of Civil Procedure 81(a)(2), and Habeas Corpus Rule 11." *Mayle*, 545 U.S. at 655. Leave to amend under Rule 15 is appropriately denied when the proposed amendment would be futile. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Russell v. Martinez*, 325 F. App'x 45, 46 (3d Cir. 2009) (per curiam). "Examples of futility in the habeas context include . . . procedurally barred amendments." *Mitchell v. May*, No. 16-907, 2020 WL 1234950, at *10 (D. Del. Mar. 13, 2020) (citations omitted); *see also Weary v. Mason*, No. 19-2302, 2022 WL 22767765, at *2 n.2 (E.D. Pa. Jan. 25, 2022) (denying motion to amend to raise an unexhausted claim where petitioner failed to establish grounds for a stay under *Rhines*).

At this time, Petitioner has three options regarding the ex post facto claim. Petitioner may withdraw his request to amend his Petition to raise the unexhausted ex post facto claim. Alternatively, he may attempt to show that the Court should grant a stay to permit him to exhaust the ex post facto claim. Finally, to the extent his ex post facto claim is procedurally defaulted, Petitioner may attempt to establish cause and prejudice or a fundamental miscarriage of justice to excuse his procedural default.

**IT IS**, therefore, on this _____ day of July, 2025, **ORDERED** as follows:

1.    For the reasons stated in this Memorandum and Order to Show Cause, Petitioner shall **SHOW CAUSE** within 45 days of the date of entry of this Memorandum and Order to Show Cause as to why his Petition (ECF No. 1) shall not be dismissed as moot.

2.    Within 45 days of the date of entry of this Memorandum and Order, Petitioner must either withdraw his request to amend his Petition to raise the unexhausted ex post facto claim,

14

submit arguments showing that the Court should grant a stay to permit him to exhaust the ex post facto claim, or, if the ex post facto claim is procedurally defaulted, establish cause and prejudice or a fundamental miscarriage of justice to excuse his procedural default.

3.      If Petitioner answers this Memorandum and Order, Respondents shall file a response to Petitioner's submission within 45 days of the date of filing of Petitioner's answer.

4.      Petitioner may file a reply to Respondents' response within 30 days of the date of filing of Respondents' response.

5.      If Petitioner fails to establish why the Petition shall not be dismissed as moot, the Court will dismiss the Petition as moot; if Petitioner establishes that the Petition should not be dismissed as moot, but fails to either (a) withdraw his request to amend his Petition to raise the unexhausted ex post facto claim, (b) submit arguments showing that the Court should grant a stay to permit him to exhaust the ex post facto claim, or (c) if the ex post facto claim is procedurally defaulted, establish cause and prejudice or a fundamental miscarriage of justice to excuse his procedural default, the Court will deny the request to amend and rule on the two claims raised in the Petition; if the Petition is dismissed, Petitioner may lose his opportunity for federal habeas review.

6.      For docket management purposes only, the Clerk of the Court is directed to **ADMINISTRATIVELY TERMINATE** this matter pending the parties' submissions and the disposition of the issues raised in this Memorandum and Order to Show Cause.

7.      The Clerk of the Court shall serve a copy of this Memorandum and Order to Show Cause upon Petitioner by regular U.S. mail.

**GEORGETTE CASTNER**
**United States District Judge**

15